This video is a work of fiction. Any resemblance to actual people, living or dead, is coincidental and unintentional. This video is a work of fiction. Any resemblance to actual people, living or dead, is coincidental and unintentional. Van den Hoeven Horticultural v. Glass Investment Projects Mr. Oliver, when you're ready. Good morning. May it please the Court. The Board's opinion provides an insoluble claim construction that fails to indicate the real scope of the claims. Furthermore, the decision fails to articulate a reasonable basis for finding that the prior art, particularly Reisinger, would fall outside of the scope of the claims. Indeed, if we look at the claim construction and the record, we'll find that the exact same structure can both fall within the claims and outside the claims, depending on nothing more than the label that happens to be assigned to that structure. But the claim refers to an end gable. Correct. And very close to the claims, the end of the written description, there is a distinction between a gabled end and pipes. And doesn't that distinguish Reisinger? No, Your Honor. Because pipes and ducting are equivalent, and Reisinger has ducting. So doesn't the specification itself indicate pretty much that Reisinger does not describe an end gable? Let me explain, Your Honor. We disagree with that. First of all, Reisinger just discloses an enclosure. It's called by the party, by GIP, a duct. But as we'll see, also called a chamber. So we have chamber falling within the claims and duct allegedly falling outside the claims, even though they're used interchangeably. But to answer your specific question, Your Honor, with respect to that piping embodiment, that, first of all, was not addressed below. The parties did not discuss piping with respect to distinction. Yes, but we can read the specification. And I hope that you do, and I'll explain what to look for when you do. The board says because of the presence of the word piping there, that embodiment should be distinguished from an end gable. That does describe an embodiment that does not use an end gable, but not because of the presence of pipes. What an end gable is, as we'll discuss here today, is it's a chamber for mixing air. It mixes recirculated air, and it mixes ambient air for being blown into a greenhouse. In that piping embodiment, and the end gable is stated in claims as outside of the growing section, so it's this area outside of the growing section that mixes air. In the piping embodiment, instead of mixing the air outside of the growing section, we have a direct input of the ambient air into the fans, so it's blown directly into the growing chamber. The pipe provides the recirculated air directly into the fan, so it is blown into the growing section. Into the output side of the fan or the input side of the fan? The input side of the fan. The input. Yeah, but the fan is— So why isn't that little bit of space essentially serving the same function as some larger space on the input side of the— I thought that the key distinction was a difference in function, that the pipes were putting the recirculating air onto the output side of the fan so that the fan would blow it, and what's missing in that is some kind of area on the input side of the fan for mixing. Well, to your point, it's not made clear, but what is made clear throughout the patent is that the fan is not part of the end gable. It is what takes the air from the end gable. So the end gable is some space before the fan that provides mixing. In one embodiment, an end gable embodiment, there is that premixed air. In the piping embodiment, it is not premixed. It is simply separately blown into the growing section and allowed to mix there. There's nothing about a pipe itself that makes that embodiment different. The only thing that makes that embodiment different is that there's no premixing of air. Let me just try to say what's in my mind. If the pipe example had put the recirculated air into the output side of the fan, then it seems to me it would be making a clear, easily understood functional distinction between the notion of gable and that. But as soon as you say that the pipe is putting the recirculated air onto the input side, right at that space, there is a mixing. So now I'm not sure what the distinction is that the patent is making when it says this is non-gabled. First of all, I don't know that it's clear, so I probably should not have jumped forward to say it's on the input side. But the patent makes clear that the end gable is before the fan. The fan, in your interpretation, Your Honor, the fan would have to be inside the end gable or part of the end gable. What the end gable is described in the specification and shown as being in advance of the fan, and I believe that might be even indicated in the claims, the end gable and the fan are recited separately throughout the claims, I believe. And therefore the fan is not part of the end gable. Whether or not mixing might take place in the fan or not, it is not what is described as an end gable in the specification. Moreover, and I would like to direct this to even a more important point, the distinction that was made by the board with respect to Reisinger is that a space existed between what was alleged to be a chamber or mixing area or duct or whatever you might call it in Reisinger and the end of the greenhouse wall. So the claim construction itself made no adoption of this idea of spacing. Yet that's what the board seemed to rely on in saying Reisinger is not an end gable. But if they're going to implicitly in their discussion of the prior art rely on something that's not in the claim construction, then their application of claim construction is improper. And if they are implicitly adopting this idea that if a space exists, it is not an end gable, then they should have addressed the arguments below that that is an improper construction and that Reisinger would read on that in any event. To your point, Your Honor, with respect to Reisinger, there is at least one embodiment where there is no space, something the board did not address in its final decision because it did not adopt a claim construction with regard to spacing. On this idea of whether or not there's a duct or a chamber because of whether or not a space exists or not, the idea that there cannot be a space between the end gable and the end of the greenhouse isn't even supported in the specification. If we were to look in the specification at Appendix 25, Figure 2, the end gable wall is not the outermost structure of the greenhouse. There is a space between the end gable wall 26 and the outside of the greenhouse, as you can see to another structure on the left. So the specification itself has exactly what Reisinger has, a space between the end gable and the outside wall. If the board is relying on this idea of there being a space between the end gable or duct or whatever chamber, whatever you want to call it, in Reisinger and the outside wall, there has to be some reason to read such a feature into the claims. Now, if you're going to read something from the specification into the claims, it has to be important and indicated as important in the specification. There is nothing in the specification that even provides 112 support for the idea of no spacing. It wouldn't be proper to even redraft this claim to say there's no spacing because if we look at it, what is described and shown in Figure 2 of the patent and the other figures, Figure 5 as well, is that there is a space between what the patent calls an end gable, between the wall 26 or 66, depending on what structure you're looking at, and the outside. So if the patent describes a space and the prior art describes a space, how can we distinguish the prior art because it has a space while at the same time the board is saying it's not adopting the construction of space? What we have here is construction that says we're not going to look at the spacing issue, we're just going to say it's a duct, not a chamber. In that regard, Reisinger just says it's an enclosure. The petition said Reisinger has a chamber in the Appendix 666. GIP agreed that Reisinger had a mixing chamber. Specifically, GIP said that Reisinger has, and I quote, duct that forms the mixing chamber at the Appendix 298. And on that same page referring to it as the Reisinger mixing chamber. If Reisinger is both a duct and a chamber and the claim construction says that a duct falls outside the claim and a chamber falls inside the claim, that would mean Reisinger both falls outside of the claim and inside of the claim only depending on what part of the admission of GIP you read. Is it a duct? Is it a chamber? It also says that it could be a plenum. But the only definition of record in the specification of what a plenum is states, and I quote, an air-filled space in a structure. And that's in the appendix at 3039 through 3042. So the board's construction says a duct can't fall within the claims and a plenum or chamber filled with air can. But if a plenum is just a space filled with air and a duct's a space filled with air, how do we know what the difference is between what one falls in and what falls out of the claim construction? If a chamber is just an air-filled space and it's admitted that Reisinger has a chamber, how can it fall outside of the claims? If the question is one of spacing, how can we read spacing into the claims when the spacing issue does not exist at all in the patent? This is the knot that has been created by the claim construction below, and this is what we're asking for assistance with on appeal. We don't know how to distinguish between what falls within the claims and what falls out of the claims. Why is Reisinger different? Reisinger doesn't say it's a duct. It just says that it's a closure. Does it mix air? That's agreed. Yes, it does. Does it have the required vents? It does. Does it have the required louvers? Yes, it does. So the question becomes what makes it different? If it's not the spacing, if it's not the term duct or plenum or chamber because they're used interchangeably, there is simply nothing for us to find with respect to this that would tell us why structurally, not with just what label you have to choose. In that regard, too, if, as the Board argues, there's this spacing issue, it was argued below that, as admitted by GIP, there were versions of Reisinger relied upon in the petition that also had no spacing. Specifically, in the appendix at 414 through 415, a drawing of one of Reisinger's embodiments was provided by GIP. It showed a small greenhouse within a larger structure. Vanderhoeven established through the marked-up color version that even in that admitted structure, the no space or no duct would still be met by Reisinger. And looking at 415 of the appendix, there is what is an end gable, a mixing chamber. It is not spaced from the yellow greenhouse wall. It is coplanar with it. So if the Board was adopting this idea that spacing makes a difference, why didn't it consider the embodiments of Reisinger relied upon where there is no spacing? These are things that are simply not clear from the record below. We're not clear on exactly what the claim construction is because the Board says we're not going to tell you exactly what it is other than it's not a duct. We're not going to adopt either Vanderhoeven's proposed claim construction or GIP's proposed claim construction. GIP's proposed claim construction required the spacing issue, that there be no space. Well, if that's not being adopted, why is it being used to distinguish the prior art? Can I ask you what role does the Landstrom prior art play in this proceeding at this stage where I gather there's no longer a dispute over the proposition that the claims do not require a particular roof shape? Well, with respect to that, regardless of whether there's a roof shape, one of the grounds was the proposal of combining Landstrom's and Gable. For some of the claims? For all of the claims. All of the claims. And particularly what was said was... To add what? What does Landstrom bring to the table as an alternative to what's... Landstrom was originally relied upon because of the roof shape. Right. This whole idea of spacing wasn't part of the original case because it's not even shown in the patent. So there's no reason to argue the spacing issue where there's a space in the patent itself. With respect to that, regardless of why we argued to include Landstrom, we did it because of the roof shape, just in case that was an issue. But even putting that aside, the reason for the combination is the material as long as it's a proper combination. And if you look at Landstrom, there is no space between its end Gable, its area at the end of the greenhouse, and the outside wall of the greenhouse. So that if no space is required, then Landstrom, you think, solves that problem. Landstrom solves that problem, and the admitted embodiments in Risinger solve that problem as well. And for that reason, regardless of whether we proposed the combination based on the roof space or not, we said you could include the vents and chambers in Landstrom or Landstrom's end Gable in the Risinger reference. With that, I'd like to reserve the rest of my time. Mr. Wise. Good morning, Your Honor. May it please the Court. The invention disclosed in the 617 patent is a climate control system that has three modes of delivery of air to a greenhouse growing section where you can bring in from the outside cool air. From the inside, you can recycle the warm air or you can have a mixture between the two. The preferred embodiment for this control system is an end Gable which resembles a corridor at the end of a greenhouse formed by the structure of the greenhouse that has vents and louvers that control the flow of air in and out of that corridor. End Gable is not a term of art. It has no ordinary meaning. So the Board properly turned this patent specification to ascertain its meaning. And they found an embodiment and relied on an embodiment that says the invention was arranged without an end Gable using pipes for an air passageway. The Board found that piping, as taught in the 617 patent... Does that example, which is on Column 9, ever say that the pipes that are bringing the recirculated air get mixed with the ambient air? Well, as you just discussed with opposing counsel, that is unclear. But what happened below... Well, I was focused on something that I perhaps should not have been, which is where the end of the pipe is on the input end of the fan or the output end of the fan. Now I'm asking a slightly different question. Does the description of this non-Gable pipe embodiment ever say that you can use the pipe that's bringing the recirculated air and mix it with the ambient? Even if the mixing occurs on the output end of the fan. It's not clear where the mixing occurs. Does it ever say use the recirculated air at any time, including a time when the louver to the outside, to the ambient air, is open? Or is that embodiment understandable as describing use of a pipe for pure recirculation? It doesn't say either way, Your Honor. It indicates that the pipe is used to take air from the second vent down to the fan for the recycle piece. But it doesn't say what's happening in terms of mixing. The embodiment, the invention, is described as a climate control system that has those three functions. It's at the beginning of the patent. On appendix 30 in the summary of invention, makes it clear that the invention is a climate control system that controls the environment with said growing region flowing ambient air from the outside into the growing section, recirculating in a combination. It says it over and over again. That's what the invention is. And it gives two embodiments. So your thought, and I guess the board's thought, is that the piping embodiment in the paragraph on column nine really needs to be read consistent with the purpose of the invention to include the combination piece of those one, two, three. And once you do that, then we're off to the races figuring out what the heck a pipe is. And it's something that includes a duct but not a plenum or a chamber. I'll get to that in a moment, but you're absolutely correct on that. That's really the only basis for this climate construction. It's an embodiment of the invention, and that's what column nine's talking about, having these three functions. And then to the question about whether or not a pipe and a duct are the same thing, they clearly are. In this context, it's not the word pipe generally, but it's pipes for airflow. It's pipes for an air passageway. And there's no distinction between a pipe and a duct in that context. These are terms that have ordinary meaning that a layperson has common meaning and commonly understood, pipes and ducts. And they're synonymous, and they're used synonymously in the patent. And in contradistinction to gable. Correct. Although I guess part of what I'm trying to isolate is when I hear the word gable, I actually think of something that has an ordinary meaning, but that you have disclaimed. There is no ordinary meaning. It doesn't have to look like this. It's not a big room. It can be a small box. And now I've completely lost any common sense meaning of the term gable. And now I don't know what to do to fill in what has just turned in my mind into a nonce word until something in the spec tells me otherwise. But you've told me, don't think about the seven gables. Think about something else. Our construction of gable below was it's the corridor at the end, as described in the two embodiments. It's the corridor at the end of the greenhouse bounded by the outside greenhouse wall on one side and a partition on the other side. That was our construction. But the issue the whole time between the parties was whether or not the end gable included a duct and whether or not Riesinger disclosed a duct. The reason the board found, once you, the board found, based on the piping embodiment and the description of what the invention is, that a duct was being, tell me what the difference is between a duct and a small three-dimensional area through which air is moving, which I take it is what you think a gable is. I think the end gable is a large structure. Where's there something about size in this? Just looking at the figures of the patent relative to the size of the greenhouse. If you look at, for example, I'm sorry, was part of, I don't remember the board saying anything about size, did it? No, it's just distinguishing between a duct and the board says a duct, that one skill in the art knows what a duct is based on the evidence and noted that Riesinger was not a duct. And the reason that the board found... If I remember right, the Riesinger passageway, let's just call it a passageway for air, is not small. Is it? Yes. The Riesinger passageway... Doesn't it come down like this and then go all the way down the side? It's on a relative scale, your honor. Well, I know it's small in the drawing, that's not what I meant. No, no, I mean it's small relative to the end gable in the 617 patent. And the reason the board found, the board found that a duct, duct is a pipe, they're synonymous terms, and that the appellant, Vanderhoeven, failed to rebut the evidence that the patent owner brought showing that Riesinger was limited to ducts. A complete failure of proof. They did not dispute it. They said Riesinger does not mandate a duct. Riesinger could be interpreted to be something other than a duct, but Riesinger only teaches ducts. And if an end gable does not include a duct, then Riesinger does not render obviousness. Now with respect to the greenhouse in a greenhouse, argument that they've made, that was a classic new argument on rebuttal. They converted their argument from an obviousness argument in the petition to an anticipation argument on rebuttal. Which is a new argument on rebuttal. And the board properly did not consider it and put it into their opinion. So we heard a lot of talk about the spacing issue. Spacing issue is important for a couple of reasons. One, it makes it clear that Riesinger is a duct. Two, it fails to meet our definition of what an end gable is, and it fails to meet their definition of what an end gable is because they require the end gable to be at the end wall. And if it's spaced apart from the end wall, it's not at the end wall. The board... What do you mean by at the end wall? I guess I took it that the dispute was something like one surface that forms the gable has to be coincident with a greenhouse wall. That was our argument, Your Honor. Why would you expect that to be the case? Why wouldn't you have... Couldn't you have essentially a... Let's call it a pipe from the outside louver that brings you into the chamber where this nice mixing is going to occur? Why can't you have a duct that is the vent? No, no, the chamber is still... The chamber's there and now you have a duct that's become the vent, right? Yeah, you know, like my dryer vent. Because the patent makes clear that piping is not part of the end gable. That's the distinction. That's not the piping. The piping that the patent is talking about is piping from that inside wall up in that little... That's true. ...northeast corner of the drawing where the recirculating air comes back in and is going to head back to the fan. There's no discussion of piping from the outside into the chamber. You're right, Your Honor. Why is that excluded? I think because if you accept the definition of end gable as not including a duct, it would be argued that that is a duct and that it's outside the scope of end gable. One thing I want to point out with the spacing issue, there's an argument that was presented today that if we look at the first few examples of the patent, for example, Appendix 25, Figures 1 and 2, that the outside gable wall, 26, is not the outside wall. That's incorrect. What you're seeing to the left of it, which is being argued as a spacing issue... The drain pipe. ...is a gutter. So there is no space-to-part issue in that context. And we'll probably hear about the drawing errors, but there was a drawing error that everybody recognized and the board recognized with respect to the petition that was corrected in the patent owner's response. So a good bit of the theme that I think Mr. Oliver stressed was how is somebody supposed to tell what's allowed and what's not allowed? If you're a lawyer for somebody other than this patentee, what do you tell somebody who's building a greenhouse about... and they want to mix some air, you know, what do you tell them about what they can do and not do without offending this patent? If you use ductwork, you're good to go. Smallish ductwork. Not the kind that... The issue of scale is kind of a red herring. Mission impossible. I would say the issue of scale is a red herring. If you look at the testimony, a duct and a plenum are words that have meaning to one of ordinary skill in the art. And like anything, we can scale things and they have different meaning. You know, not different meaning, but we can scale things up to argue, oh, if this is bigger than this, is it the same? That's the argument that they're making. Mr. Turkowitz explained very clearly that there are two things that differentiate plenums and duct. One is the air velocity. Ducts are going to be smaller because the air velocity has to go through it to move into the growing section. That's one piece. The second piece, the plenum, which is the distribution chamber, has to be bigger than the duct. And there's a formula for that, a rule of thumb formula that the area ratio is two and a half to three times the plenum versus the sum of the lateral ducts. Makes sense because the plenum's a big, you know, big area where air is mixing and then the fans are pushing it through those lines and you need to have that velocity to make it move and you need to have that big area. Otherwise, it's not a plenum. And, you know, that's not a plenum. It's too small. But it's size relative to the structures. It's not size in the abstract. The last thing I want to address is the obviousness issue. You were asking about Landstrom? The second reference. Right. So Landstrom originally was decided for the purpose of the pitched end gable. And there is no evidence of a motivation to combine. They've argued a lot of things. Well, the first thing I forgot to mention was it was a conditional obviousness argument saying if the patent owner construes the term end gable to mean a pitched gable, then you look to this combination. And what varied within the argument was the idea that we could take the chamber of Landstrom and combine it with Riesinger. But there's no explanation as to how you could do it. And when you look at what they argued for the purpose of obviousness, they argued that you could do it. It's in the same field. And there's a reasonable expectation it would work. And it wouldn't change the operation. But there's no explanation why there would be a motivation of one of skill and the art to make the combination. And that's required. The reasons I've indicated today, the board's decision should be affirmed. Do you have any more questions? I see you're out of time. Okay, thank you. Mr. Oliver, your rebuttal. Thank you, Your Honor. I'd like to point out a few misstatements of the record and to clarify a few things. First of all, air velocity is discussed nowhere in the patent with respect to distinguishing an end gable from anything else. And in fact, as discussed in our brief at our opening brief at 42, GIP's own expert, Mr. Terkelwich, established or ultimately admitted that air velocity doesn't make a difference with respect to there being a difference in size. Dr. Terkelwich, or Mr. Terkelwich, was asked about this during his deposition. He originally said, well, maybe a duct or a plenum is large compared to a duct. But he also admitted, and I quote, there is nothing there which mandates a particular size in Claim 1. That's in the appendix at 1638. He also admitted that a duct and a plenum could be the exact same size and shape, and he said that they would still be different to him. That's in the appendix at 1761 through 1764 and 1834. When ultimately pushed as to how do we know what the difference is between a duct and a plenum, he retreated to a mantra of a duct is a duct and a plenum is a plenum and that's all you need to know. He wouldn't tell us about the air velocity, although he started to, and then he said it wouldn't matter. He said they could be the exact same size. If you look in the brief at appendix 1761, 1765, 1834, and you can figure out what the difference is between a duct and a plenum, then you have something on me, because I've been looking at this for a long time and I can't figure that out. With respect to the argument that there is a spacing requirement, this is very important. G.I.P.'s expert originally did this turn view, what they called the axonometric view of the version in the pattern, and if you look at that, it can be found in the appendix at 164. Their own expert's drawing shows the end gable spaced away from the wall, that there's a space in there just like Reisner. Now, during the trial, they changed their minds. They said, no, no, no, that's not the way it works. It's a gutter, which is what you just heard here. The problem with that is what the expert relied upon to change his mind from what he looked at in the patent and came to a conclusion, until when he actually said it was a gutter, was a citation to after the filing date evidence. Specifically, he eventually saw the actual thing they built years after. A 2013 reference, and this can be found in the record, in our blue brief at 24 and 25, and in the appendix at 304 or 305. The thing that they offered as evidence to distinguish what is shown in the patent, meaning there's a space there, is a printed publication five years or six years after the filing date. So the question is, if their expert, when looking at the patent, thought there's a space there, and only corrected himself once he saw evidence that could never have been viewed by a person who was still in the yard, how can we use that to not only limit what's in the specification and say there's no space, but then read that into the claims? The board's claim construction doesn't include the spacing, yet they seem to rely upon it, yet nothing in the intrinsic record would suggest that there's spacing. If a duct and a plenum can be the exact same size, the exact same dimensions, have the exact same air velocity, there is no way to figure out why one falls inside the claims and one falls outside the claims. And that's the problem with the decision below. Okay. Thank you. Thank you both. The case is taken under suspicion. Thank you.